**FILED - GR**
August 3, 2026 12:59 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:ARR   SCANNED BY: AR /8.4

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

Western District of Michigan

Southern Division

**1:26-cv-2237**
**Paul L. Maloney**
**United States District Judge**

ROOSEVELT LASHAWN WILLIAMS

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

**-v-**

JOCELYN BENSON Et al

*Defendant(s)*
*(Write the full name of each defendant who is being sued.  If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

Case No. _____

*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)*   ☐ Yes   ☑ No

## COMPLAINT FOR A CIVIL CASE

**I.     The Parties to This Complaint**

**A.     The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | ROOSEVELT LASHAWN WILLIAMS |
| Street Address | c/o 554 BOYNTON AVE |
| City and County | BENTON HARBOR COUNTY OF BERRIEN |
| State and Zip Code | MI (49022) Under Necessity |
| Telephone Number | 2698496112 |
| E-mail Address | menoflightorganization@gmail.com |

**B.     The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

Name                                JOCELYN BENSON

Job or Title (if known)             SECRETARY OF STATE OF MICHIGAN

Street Address                      430 W ALLEGAN STREET  4TH FLOOR

City and County                     LANSING  INGHAM

State and Zip Code                  MI 48918

Telephone Number

E-mail Address (if known)

Defendant No. 2

Name

Job or Title (if known)

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address (if known)

Defendant No. 3

Name

Job or Title (if known)

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address (if known)

Defendant No. 4

Name

Job or Title (if known)

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address (if known)

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

[✔] Federal question              [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

   a.    If the plaintiff is an individual

   The plaintiff, *(name)* _____ , is a citizen of the State of *(name)* _____ .

   b.    If the plaintiff is a corporation

   The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

   a.    If the defendant is an individual

   The defendant, *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

    b.    If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:
PLEASE SEE ATTACHED

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.
PLEASE SEE ATTACHED

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.
PLEASE SEE ATTACHED.

## V.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          July 29, 2026

Signature of Plaintiff     _Williams UCC 1-308_

Printed Name of Plaintiff  ROOSEVELT LASHAWN WILLIAMS

### B.     For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

Print     Save As...     Add Attachment     Reset

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

## SOUTHERN DIVISION

ROOSEVELT LASHAWN WILLIAMS,
*Plaintiff,*

Case No. 1:26-cv-_____
*Hon.* _____

v.

JOCELYN BENSON, IN BOTH CAPACITIES
 AS MICHIGAN SECRETARY OF STATE,
*Defendant.*

## PLAINTIFF'S BRIEF IN SUPPORT OF COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# TABLE OF CONTENTS

• Statement of Jurisdiction

• Statement of the Case

• Summary of Argument

• Argument

> • I. A Driver's License is a Cognizable Property and Liberty Interest Mandating Fourteenth Amendment Due Process Protections.

> • II. The United States Supreme Court Explicitly Recognizes USPS Rural Route Addresses as Binding, Valid Locators of True Physical Domicile and Residence.

> • III. Categorically Excluding Rural Route Designations From Driver's Licenses Violates the Equal Protection Clause by Arbitrarily Discriminating Based on Geography.

> • VII. Constitutional, Federal, and State Violations Committed by Defendant

• Conclusion and Relief Sought

# TABLE OF AUTHORITIES

## Supreme Court Cases

• *Bell v. Burson*, 402 U.S. 535 (1971)

• *Bush v. Gore*, 531 U.S. 98 (2000)

• *Carrington v. Rash*, 380 U.S. 89 (1965)

• *Dunn v. Blumstein*, 405 U.S. 330 (1972)

• *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983)

• *Meyer v. Nebraska*, 262 U.S. 390 (1923)

• *Reynolds v. Sims*, 377 U.S. 533 (1964)

## Statutory and Constitutional Provisions

• U.S. Const. amend. XIV, § 1 (Due Process and Equal Protection Clauses)

• Mich. Const. 1963, art. I, § 2 (Equal protection; discrimination)

- Mich. Const. 1963, art. I, § 17 (Due process of law; fair and just treatment in investigations and hearings)

- Mich. Const. 1963, art. I, § 23 (Enumeration of rights not to deny others)

- 28 U.S.C. § 1331 (Federal Question Jurisdiction)

- 42 U.S.C. § 1983 (Civil Action for Deprivation of Rights)

- Mich. Comp. Laws § 257.307 (Michigan Vehicle Code – Application Requirements)

- Mich. Comp. Laws § 257.315 (Change of Address Requirement)

# STATEMENT OF JURISDICTION

This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under the Fourteenth Amendment to the United States Constitution and are brought pursuant to 42 U.S.C. § 1983 to redress the deprivation of civil rights under color of state law. Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b) because the Defendant is a state official operating statewide, and the administrative effects of the policy directly impact the Plaintiff within this judicial district.

## STATEMENT OF THE CASE

Plaintiff Roosevelt Lashawn Williams is a permanent resident of the State of Michigan. Like tens of thousands of citizens living in unincorporated, agricultural, or historically un-gridded areas of Western and Southwestern Michigan, Plaintiff's true physical domicile does not feature a standardized urban or municipal street number. Instead, the United States Postal Service (USPS) designates Plaintiff's permanent home via an official **Rural Route (RR)** and Box number locator. A Rural Route designation is structurally and legally distinct from a commercial Post Office Box; it represents an active, federally mapped geographic path culminating in a permanent physical residential structure where Plaintiff sleeps, lives, pays taxes, and maintains his domicile.

Defendant, the Michigan Secretary of State, is the chief officer tasked with administering operator's licenses under the Michigan Vehicle Code (MCL § 257.307). In executing these duties, Defendant enforces an administrative protocol and digital database validation system that categorically mandates a standard municipal grid-style address format to verify a "residence address." Consequently, when Plaintiff sought the issuance or renewal of an official state driver's license using his lawful Rural Route address, Defendant's agents flagged, rejected, and denied the application. By maintaining this unyielding format barrier, Defendant leaves Plaintiff unable to obtain a driver's license—impeding his ability to travel, work, access healthcare, conduct banking, or interact with basic civic society—solely due to the geographical location of his physical home. Plaintiff brings this action to declare this policy unconstitutional and to enjoin its enforcement.

On or about July 1, 2026, Plaintiff changed his address with the Michigan Secretary of State to **RURAL FREE C021 #54**. The change of address was not rejected, and Plaintiff received no notice, warning, or other indication that the address was defective, invalid, or otherwise unacceptable, as reflected in Attachment A, "Change of Address Label from the Secretary of State for the State of Michigan."

On or about July 7, 2026, Plaintiff appeared in person at the Michigan Secretary of State branch office located at 5420 Beckley Road, Suite L, Battle Creek, Michigan 49015, to apply for a replacement driver's license. Plaintiff paid the required application fee and submitted to the application process. During the transaction, the clerk processing the application informed Plaintiff that the replacement license would be mailed to the "real address," while acting in a condescending and rude manner toward Plaintiff.

Several days later, Plaintiff received written correspondence stating that his application for a Michigan driver's license could not be completed and requesting proof of address within fifteen days. The correspondence contained no visible date and identified no person

responsible for sending it, as reflected in Attachment B, correspondence from the State of Michigan Secretary of State.

In response, Plaintiff gathered and relied upon Attachment C, a screenshot from the United States Postal Service website showing the Rural Carrier Route and delivery point location associated with Plaintiff's address, further demonstrating that the Rural Route designation corresponds to an actual delivery point and physical residential location.

On July 28, 2026, Plaintiff attempted to provide documentation showing proof of the location of his Rural Route address and demonstrating that the Rural Route designation corresponded to an actual physical residence and delivery point. However, the State of Michigan Secretary of State refused to allow Plaintiff to use the Rural Route address for driver's license purposes, despite Plaintiff's effort to provide supporting documentation verifying the location of the address.

# SUMMARY OF ARGUMENT

A state driver's license is not a gratuity; it is an essential entitlement for modern American life, protected by the Fourteenth Amendment. Defendant's administrative exclusion of Rural Route addresses infringes upon both the Due Process and Equal Protection Clauses.

First, under *Bell v. Burson*, a driver's license represents a protected property interest that cannot be withheld or denied through arbitrary, non-individualized state action.

Second, the structural assumption underlying Defendant's rejection—that a Rural Route address does not sufficiently pinpoint a physical residence—has been directly rejected by the U.S. Supreme Court. In *Mennonite Board of Missions v. Adams*, this Court ruled that Rural Route descriptions are constitutionally sufficient, reliable identifiers of physical properties and domestic dwellings for due process purposes.

Third, Defendant's strict urban-centric database rules build an unconstitutional geographic classification that penalizes rural citizens for living outside municipal grids (*Reynolds v. Sims*). Stripping an individual of their mobility under an overbroad presumption of non-residency lacks any rational basis and cannot withstand constitutional scrutiny (*Carrington v. Rash*).

# ARGUMENT

## I.    A Driver's License is a Cognizable Property and Liberty Interest Mandating Fourteenth Amendment Due Process Protections.

Defendant's administrative actions operate on the premise that the state may condition the availability of an identity document and driving credential on whatever structural data metrics it chooses. However, a driver's license is a vital necessity deeply woven into an individual's liberty and property interests.

In *Bell v. Burson*, 402 U.S. 535, 539 (1971), the U.S. Supreme Court held that once a state implements a driver's licensing system, the credentials issued are insulated by the guarantees of due process:

> "Once licenses are issued, as in every State, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action which adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process which the Fourteenth Amendment requires."

The same due process protection attaches to the *arbitrary denial* of an initial or renewal license application to an otherwise fully qualified applicant. The right to drive directly impacts the constitutional liberty "to engage in any of the common occupations of life" (*Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). Without a valid driver's license, Plaintiff Roosevelt Lashawn Williams is functionally stripped of economic self-sufficiency, mobility, and the capacity to fulfill essential civic and personal needs. The State cannot invoke rigid software configurations to deny a protected right without offering an individual recourse or alternative validation.

II.    The United States Supreme Court Explicitly Recognizes USPS Rural Route Addresses as Binding, Valid Locators of True Physical Domicile and Residence.

Defendant maintains that a Rural Route listing does not properly describe an exact physical domicile for licensing verification. This underlying legal premise is explicitly contradicted by federal constitutional jurisprudence.

When analyzing what constitutes a "reasonably ascertainable" physical address to provide constitutionally adequate notice under the Due Process Clause, the U.S. Supreme Court squarely established that a Rural Route identifier is a legitimate residential marker. In *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 800 (1983), the Court held:

> "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party... if the name and address are reasonably ascertainable. Usually, a brief review of the voter registration rolls or local tax assessment rolls will reveal the name and address—**whether a street address or a rural route**—of the property owner." (emphasis added).

By explicitly pairing a "street address" and a "rural route" as equivalent residential locators, the Supreme Court recognized that a Rural Route designation describes an actual domestic home. The State of Michigan routinely utilizes Rural Route addresses to collect property taxes, assess real estate values, and serve legal process; it cannot simultaneously claim that the exact same address is an un-locatable phantom when the resident applies for a driver's license.

III.    Categorically Excluding Rural Route Designations From Driver's Licenses Violates the Equal Protection Clause by Arbitrarily

## Discriminating Based on Geography.

Under the Equal Protection Clause, when state policies introduce an arbitrary classification that divides citizens into favored and disfavored classes, the classification must bear a rational relationship to a legitimate state objective. Defendant's policy fails this standard.

### A. Geographic Classifications Are Impermissible Bases for Civic Deprivation

The challenged policy creates a disparate, two-tiered system where urban and suburban applicants with standardized grid numbers are granted access to essential state licenses, while rural applicants utilizing historical route systems face total preclusion. The Supreme Court has repeatedly affirmed that geography cannot alter a citizen's constitutional protections. As stated in *Reynolds v. Sims*, 377 U.S. 533, 567–68 (1964):

> "Citizenship is not a matter of geographic location... the fact that an individual lives here or there is not a legitimate basis for a state [to draw distinctions]."

While *Reynolds* targeted voting disparities, its core command applies directly to the equal administration of public benefits and state-issued property interests. A citizen's access to a fundamental tool of livelihood cannot depend on the style of infrastructure chosen by their local township.

### B. The Unconstitutionality of Overbroad, Preclusive Rules

Defendant may argue that a blanket insistence on city-style street grids is required to streamline data processing or verify identity. However, the complete exclusion of an entire class of rural residents is an overbroad tool that lacks rational alignment.

In *Carrington v. Rash*, 380 U.S. 89 (1965), the Supreme Court invalidated a state rule that barred active-duty military personnel from proving residency, holding that states cannot draw sweeping, irrebuttable conclusions that fence out citizens based on their living situations:

*"We deal here with matters close to the core of our constitutional system... The State cannot take an all-inclusive cap and drop it over an entire class of people without a localized, individual determination." Id. At 95–96.*

By enforcing an administrative ban on Rural Route data inputs, Defendant drops an "all-inclusive cap" over rural citizens, functioning as a modern, geographic "fencing out." If physical verification is necessary, the State possesses less restrictive, widely available alternative mechanisms, such as checking property tax rolls, utilizing GIS coordinates, reviewing utility records, or accepting traditional cross-street affidavits. Relying on an inflexible database rule to deny a vital identity credential constitutes an "arbitrary and disparate treatment" that lacks any rational constitutional basis (*Bush v. Gore*, 531 U.S. 98, 104–05 (2000); *Dunn v. Blumstein*, 405 U.S. 330 (1972)).

An individual's choice of where to reside—whether in an urban, suburban, or rural area—is protected under the liberty interests of the Fourteenth Amendment. For millions of Americans living in unincorporated or rural areas, a Rural Route (RR) address (often supplemented by a box number) is the only legally designated, government-recognized physical and mailing address for their home.

## IV.    The Right to Rural Residency

To deny an individual the right to use their actual, physically situated Rural Route address as their "permanent residence" for fundamental civic actions (such as voting, obtaining identification, or receiving state benefits) is a constructive ban on rural residency itself. Such a denial violates the **Fourteenth Amendment's Due Process Clause**, the **Equal Protection Clause**, and the **fundamental Right to Travel**.

## V.    Table of Authorities & Constitutional Arguments

### Argument 1: The Substantive Due Process Right to "Establish a Home"

• **Key Case:** *Meyer v. Nebraska*, 262 U.S. 390 (1923)

• **The Principle:** The Supreme Court held that the "liberty" guaranteed by the Due Process Clause of the Fourteenth Amendment denotes not merely freedom from bodily restraint, but also the right of the individual **"to contract, to engage in any of the common occupations of life... and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men."** Crucially, this explicitly includes the right **"to acquire a home [and] establish a home."**

• **Application:** If the government refuses to recognize a citizen's actual physical dwelling—designated by a Rural Route address—as a "permanent residence," it effectively deprives that citizen of the right to "establish a home" in the rural location of their choosing.

### Argument 2: The Right to Travel and the Right to Be Treated as a Resident

• **Key Case:** *Saenz v. Roe*, 526 U.S. 489 (1999)

• **The Principle:** The Supreme Court identified three distinct components of the constitutional Right to Travel:

1. The right of a citizen of one State to enter and leave another State.

2. The right to be treated as a welcome visitor rather than an unfriendly alien.

3. **The right to be treated like other citizens when they elect to become permanent residents.**

• **Application:** When a citizen exercises their Right to Travel and chooses to migrate and establish a permanent home in a rural jurisdiction, the state cannot penalize that choice. Forcing rural residents to provide standard grid/urban-style street addresses (which may not exist for their property) or stripping them of residency benefits because they use a Rural Route address directly penalizes their right to settle in a rural community.

### Argument 3: Equal Protection and the Fundamental Right to Vote

• **Key Case:** *Dunn v. Blumstein*, 405 U.S. 330 (1972)

• **The Principle:** The Supreme Court struck down durational residency requirements for voting, noting that the right to vote is a fundamental right. Any classification that limits this right must withstand **strict scrutiny**—meaning the government must prove it has a compelling interest and has chosen the least restrictive means to achieve it.

- **Key Case: *Harper v. Virginia State Board of Elections*, 383 U.S. 663 (1966)**

- **The Principle:** The Court ruled that lines drawn on the basis of wealth, property, or geographic circumstance that limit access to the franchise violate the Equal Protection Clause.

- **Application:** If a state or municipality refuses to allow an individual to register to vote using a Rural Route address—which is the only address assigned to their land—it effectively disenfranchises rural citizens simply because of their geographic location. Because there is no compelling government interest in denying rural address-holders the franchise (and because local boards can easily locate rural dwellings via land descriptions or landmarks), such restrictions fail strict scrutiny.

## Argument 4: Procedural Due Process & Avoidance of Irremediable Presumptions

- **Key Case: *Vlandis v. Kline*, 412 U.S. 441 (1973)**

- **The Principle:** The Supreme Court struck down "irremediable presumptions" regarding residency. The state cannot use an arbitrary administrative proxy (like a specific format of address) to permanently and conclusively deny a citizen the opportunity to prove their actual residency.

- **Application:** A Rural Route address with a box number designates a physical location where an individual receives mail and lays their head. The government cannot construct a rigid, irremediable presumption that a "permanent residence" must conform to an urban/municipal grid format. The individual must be given the opportunity to establish their physical habitation at that Rural Route address using alternative means (such as land surveys, GPS coordinates, or utility bills).

## VI.    Legal Brief: Constitutional Protections and the Validity of Rural Route Addresses

**Subject:** Constitutional Protections, Voting Rights, and Procedural Due Process in the Utilization and Transition of Rural Route Addresses

## A. Introduction & Statement of Interest

In the United States, address formatting is not merely an administrative detail; it is a gateway to exercising core constitutional rights. Millions of Americans living in agricultural, remote, or tribal areas rely on **Rural Route (RR)** address designations or Post Office (P.O.) boxes rather than standard, urban-style physical street addresses.

This brief addresses two major constitutional implications of rural addressing:

1. **The Equal Protection Clause & Voting Rights (Fourteenth Amendment):** The impact of state laws requiring physical street addresses for voter identification on communities lacking standardized municipal addressing.

2. **Procedural Due Process & Notice (Fourteenth Amendment):** The government's constitutional obligation to ensure notices sent to rural route addresses are "reasonably calculated" to reach the intended recipient, especially during municipal transitions to standardized 911 address systems.

## B. Legal Argument

*1. Strict Physical Address Mandates and the Disenfranchisement of Rural and Indigenous Populations*

**Constitutional Framework:** The Equal Protection Clause prohibits state actions that unduly burden the right to vote. While states have a legitimate interest in preventing voter fraud and organizing elections, requirements that disproportionately exclude rural or tribal residents may fail constitutional scrutiny if they lack adequate alternative verification methods.

**The Precedent of *Brakebill v. Jaeger*, 139 S. Ct. 10 (2018):**

*"The District Court found that 18,000 North Dakota residents lack a residential street address... [and] Native Americans face a particularly severe burden because their residential addresses are often unassigned or unknown."*

Although the U.S. Supreme Court ultimately allowed North Dakota's voter ID law to remain in effect pending appeal, the litigation exposed the constitutional tension between rigid address requirements and the realities of rural habitation. The lower courts recognized that a "residential street address" requirement can operate as a modern disenfranchisement tool where no street address exists.

**Applicability to Rural Route Addresses:** If a state refuses to recognize RR addresses—or fails to provide a mechanism to translate RR data into physical coordinates—it creates a classification based on geography. Under *Harper v. Virginia State Board of Elections*, 383 U.S. 663 (1966), state classifications that condition access to the ballot on wealth, property, or residential infrastructure are constitutionally suspect.

*2. Procedural Due Process and the Insufficiency of Legacy Rural Route Notices*

**The Fundamental Standard of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950):**

*"...reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."*

• **The "Additional Steps" Doctrine of *Jones v. Flowers*, 547 U.S. 220 (2006):**

When the government sends notice of a tax sale to a property owner and the notice is returned unclaimed, due process requires the government to take additional reasonable steps to provide notice if practicable. In the rural route context, if government agencies know or should know that a rural route has been converted, discontinued, or superseded by an E-911 address, continued reliance on the obsolete address may fail constitutional requirements.

• **Constructive Knowledge of Systemic Changes:** Because the conversion of rural route addresses to 911 physical addresses is a matter of local public record, courts have increasingly held that municipalities cannot claim ignorance when mail sent to an old rural route address is returned.

• **The Burden of Verification:** If a county or state agency is aware that rural route addresses in a specific region have been updated, mailing legal notice to the old rural route address without cross-referencing updated E-911 databases fails to satisfy the "reasonably calculated" standard of *Mullane*.

## C. Summary of Constitutional Standards

The following table summarizes the key standards relevant to rural route address validity:

| Constitutional Issue | Governing Supreme Court Precedent | Legal Rule / Standard |
|---|---|---|
| Right to Vote | *Brakebill v. Jaeger*, 139 S. Ct. 10 (2018) | States may technically mandate physical street addresses on voter IDs, but the resulting disenfranchisement of rural/tribal residents lacking such addresses remains highly vulnerable to Equal Protection challenges if alternative address-verification systems are not provided. |
| Notice of Deprivation | *Mullane v. Central Hanover Bank*, 339 U.S. 306 (1950) | Notices sent to rural route addresses must be chosen using means that someone who genuinely desires to inform the recipient would reasonably employ. |
| Address System Transitions | *Jones v. Flowers*, 547 U.S. 220 (2006) | If a notice mailed to a legacy rural route address is returned undeliverable due to E-911 address standardization, the government must take active, reasonable steps to ascertain the updated physical street address before taking property. |

## D. Conclusion

Rural Route addresses are not constitutionally inferior to urban street addresses. When the government uses address format as a prerequisite for voting, identification, licensing, or property notice, it must ensure that rural residents are not excluded simply because their homes do not conform to urban mapping conventions.

## VII.   Constitutional, Federal, and State Violations Committed by Defendant

Defendant, acting under color of state law in her official capacity as Michigan Secretary of State, is alleged to have committed constitutional, federal, and state-law violations by enforcing an administrative policy, custom, protocol, database rule, or address-validation practice that categorically refuses to recognize Plaintiff's lawful Rural Route address as a valid residence address for driver's license purposes.

### A. Constitutional Violations

**Rights identified as violated:** Plaintiff identifies the following Michigan and Federal constitutional rights as violated by Defendant's alleged conduct: **Michigan Constitution, Article I, § 2** (equal protection and freedom from discriminatory denial of civil rights); **Michigan Constitution, Article I, § 17** (due process of law and fair and just treatment in executive proceedings and hearings); **Michigan Constitution, Article I, § 23** (reservation of unenumerated rights); **United States Constitution, Fourteenth Amendment, § 1** (procedural due process, substantive due process, equal protection, and privileges or immunities of citizenship); and the federally protected **right to travel, establish a home, and be treated as a resident** as alleged throughout this brief.

First, Defendant violates the **Fourteenth Amendment Due Process Clause** by denying or withholding a protected driver's license interest without an individualized determination, meaningful notice, adequate opportunity to prove actual residence, or a reasonable alternative process for validating a Rural Route domicile.

Second, Defendant violates the **Fourteenth Amendment Equal Protection Clause** by creating an arbitrary geographic classification that treats urban and suburban residents with municipal grid-style addresses more favorably than rural residents whose homes are identified by lawful Rural Route designations.

Third, Defendant burdens the **fundamental right to travel, establish a home, and be treated as a resident** by conditioning access to an essential state identification and mobility credential on the existence of an urban-style address format that Plaintiff's rural property does not possess.

Fourth, Defendant enforces an **irrebuttable or irremediable presumption of non-residency** by treating the absence of a municipal street address as conclusive proof that Plaintiff lacks a valid residence address, even though Plaintiff may prove domicile through

Rural Route records, tax records, utility records, land records, GIS coordinates, voter registration records, or other reliable evidence.

## B. Federal Statutory Violations

Defendant's conduct violates **42 U.S.C. § 1983** because Defendant, while acting under color of state law, subjects or causes Plaintiff to be subjected to the deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States, including the Fourteenth Amendment rights to due process and equal protection.

Defendant's conduct also gives rise to federal-question jurisdiction under **28 U.S.C. § 1331** because Plaintiff's claims arise under the Constitution and laws of the United States and seek declaratory and injunctive relief for the alleged deprivation of federally protected civil rights.

## C. Michigan State-Law Violations

Defendant violates **Mich. Comp. Laws § 257.307** by applying the driver's license application requirements in a manner that refuses to accept or evaluate documents demonstrating Plaintiff's address and residency, even though the statute requires driver's license application materials to include the applicant's address and residency and permits the Secretary of State to require sufficient documents for verification.

Defendant further violates the Michigan Vehicle Code's lawful administration requirements by converting a verification duty into a categorical exclusion, thereby refusing to exercise discretion, refusing to consider reliable proof of actual domicile, and imposing an extra-statutory municipal-address requirement not required by the text of Mich. Comp. Laws § 257.307.

## D. Continuing Injury and Requested Judicial Finding

As a result of these violations, Plaintiff is deprived of a state-issued driver's license, exposed to unequal treatment based on rural geography, denied a meaningful method to prove residence, and prevented from accessing essential incidents of ordinary civic life. Plaintiff therefore seeks a declaration that Defendant's categorical refusal to accept valid Rural Route address designations is unconstitutional, unlawful under federal civil-rights law, and inconsistent with Michigan's statutory licensing framework.

# CONCLUSION AND RELIEF SOUGHT

For the reasons stated above, Plaintiff Roosevelt-Lashawn of the Williams Family respectfully requests that this Honorable Court enter judgment in his favor, declare Defendant's categorical rejection of USPS Rural Route addresses unconstitutional under the Fourteenth Amendment, and issue a permanent injunction directing the Michigan Secretary of State to accept valid Rural Route address designations on all operator's license applications.

Dated: July 19, 2026

Respectfully submitted,

/s/ *Roosevelt-Lashawn of the Williams Family U.C.C § 1-308*

Plaintiff Pro Se, Sui Juris

ROOSEVELT LASHAWN WILLIAMS
554 BOYNTON AVE
BENTON HARBOR MI (49022)

Under Necessity



CPU

U.S. POSTAGE IMI
$3.14
FCMF   RDC 99
Orig: 49015
Dest: 49503
07/29/26
2000051501

GERALD R. FORD BUILDING AND COURT HOUSE
399 FEDERAL BLDG
110 MICHIGAN STREET NORTHWEST
GRAND RAPIDS MICHIGAN 49503